**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JK Shields, LLC | |
| *Plaintiff*, | |
| v. | Civil Action No. |
| Smyth Tavern, LLC, Mercer Street Hospitality LLC, 142 Mercer Street, LLC, and John McDonald, | JURY TRIAL DEMANDED |
| *Defendants*. | |

## COMPLAINT

Plaintiff JK Shields, LLC ("JK Shields" or "Plaintiff"), by and through undersigned counsel, and for its Complaint against Defendants Smyth Tavern, LLC, Mercer Street Hospitality LLC, 142 Mercer Street, LLC, and John McDonald ("Defendants"), states as follows:

## PARTIES

1.     JK Shields is a limited liability company organized under the laws of Illinois, having an address at 177 N Ada Street, Chicago, IL 60607.  JK Shields owns and operates the affiliated restaurants Smyth and The Loyalist, located at 177 N. Ada Street, Chicago, Illinois.

2.     On information and belief, Smyth Tavern, LLC, 142 Mercer Street, LLC and Mercer Street Hospitality LLC are all New York limited liability companies with an address of 142 Mercer Street New York, New York. On information and belief, John McDonald is the owner of each of the three corporate Defendants. Defendants own and operate a series of restaurants, including Lure Fishbar, with locations in Chicago and New York, and Smyth Tavern, a bar and restaurant located at 85 W. Broadway Street, New York, New York.

1

**NATURE OF THE CASE**

3.      This is an action for (i) trademark infringement under the Lanham Act; (ii) unfair competition under the Lanham Act; (iii) trademark dilution under the Lanham Act; (iv) trademark dilution under the Illinois Trademark Registration and Protection Act, formerly the Anti-Dilution Act, 765 ILCS 1036/65 (v) common law unfair competition; (vi) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505; and (vii) violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court also has supplemental jurisdiction over the state law claims included herein pursuant to 28 U.S.C. § 1367, as such claims are so related to the federal claims over which this Court has original jurisdiction that they form part of the same case or controversy.  In addition, the Court has subject matter jurisdiction over Plaintiff's unfair competition claim under the common law of Illinois.  *See* 28 U.S.C. § 1338(b).

5.      Upon information and belief, Defendants are doing business in the State of Illinois through the ownership and operation of at least one restaurant in Illinois and through advertising their restaurants to Illinois consumers.

6.      Upon information and belief, this Court has personal jurisdiction over Defendants because Defendants own and operate a restaurant in the state of Illinois, and advertise all of their restaurants to consumers in Illinois, through their website at https://www.lurefishbar.com and https://www.smythtavern.com. Specifically, Defendants purposely direct their business activities toward Illinois residents, through their websites, social media accounts and actions, as described below, and Defendants derive substantial revenue from their services in Illinois. Further, on information and belief, Defendants have entered into contracts and leases with other Illinois-based

2

entities that have enabled them to own and operate Lure Fishbar in Chicago. Additionally, Plaintiff's claims for trademark infringement, unfair competition, dilution, and deceptive trade practices arise from acts conducted and harm sustained in the State of Illinois. On information and belief, Defendants conduct continuous and systematic business within the State of Illinois and have played an integral part in the infringement of Plaintiff's trademark rights through advertisement of its restaurants directed at residents in this judicial district. Defendants are committing acts that have wrongfully caused Plaintiff harm in the State of Illinois.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to Plaintiff's claims occurred in this district. Particularly, Defendants are targeting consumers in Illinois and nationwide—including those consumers located within this district through their advertisement and promotion of the Chicago-based Lure Fishbar, and their associated advertisements of "Smyth Tavern," which is causing actual confusion among consumers within this judicial district.

## FACTS RELEVANT TO ALL COUNTS

### JK Shields's Smyth Restaurant and SMYTH Marks

8.      JK Shields owns and operates the affiliated restaurants Smyth and The Loyalist. Symth is located on the second floor, above a bar/restaurant (also owned by JK Shields) called The Loyalist.



9.      The sister restaurants opened within weeks of each other in July and August 2016. Smyth is the fine dining companion restaurant to the casual bar and restaurant, The Loyalist.

10.     JK Shields owns U.S. Trademark Reg. No. 5,070,435 for the mark SMYTH and U.S. Trademark Reg. No. 5,143,480 for the mark SMYTH THE LOYALIST, both for bar and restaurant services in Class 43. JK Shields also owns recently filed U.S. Trademark Appl. No. 99/492,042 for the mark SMYTH (the "SMYTH Application"), for bar and restaurant and related services in Class 43. The registrations for the SMYTH and SMYTH THE LOYALIST trademarks are referred to collectively as the "SMYTH Registrations"; the SMYTH Registrations and the SMYTH Application, along with Plaintiff's common law rights in SMYTH and SMYTH THE LOYALIST, are all collectively referred to herein as the "SMYTH Marks." Copies of the SMYTH Registrations and the SMYTH Application are attached, respectively, as **Exhibits A-C**.

11.     In 2016, just three months after it opened, Smyth was honored to be awarded one Michelin star, for the upcoming 2017 guide. Just one year later, Smyth was awarded its second Michelin star. *See* https://www.dnainfo.com/chicago/20161102/west-loop/roister-oriole-michelin-giude-2017, attached as **Exhibit D**; *see also* https://www.chicagotribune.com/2017/10/20/michelin-awards-two-stars-to-smyth-24-other-chicago-restaurants-honored, attached as **Exhibit E**.

12.     Today, Smyth holds the rare and enviable distinction of being awarded three Michelin stars, one of only fourteen such restaurants in the United States, and the *only* such restaurant with that distinction in Chicago. *See* https://guide.michelin.com/us/en/restaurants/3-stars-michelin, filtered to show the three-star restaurants in the United States, attached as **Exhibit F**, https://guide.michelin.com/us/en/article/michelin-guide-ceremony/michelin-stars-in-the-michelin-guide-chicago-2025, attached as **Exhibit G**, and, https://www.nytimes.com/2025/11/18/dining/the-2025-michelin-stars-awarded-for-the-northeast-and-chicago.html, attached as **Exhibit H**. Smyth has held this distinction since November 2023. *See* https://guide.michelin.com/ca/en/article/features/smyth-three-michelin-stars-michelin-guide-chicago, attached as **Exhibit I**.

13.     The Michelin Guides are a series of guidebooks published by the French company Michelin for more than a century, and the Michelin Guides can award one, two or three stars to restaurants as an indicator of quality and excellence of the food, ingredients, preparation, service, and other attributes associated with a restaurant experience. The Michelin Guide website outlines the differences in distinctions associated with their awarding restaurants one, two and three stars, respectively:

One MICHELIN Star is awarded to restaurants using top quality ingredients, where dishes with distinct flavours are prepared to a consistently high standard;

Two MICHELIN Stars are awarded when the personality and talent of the chef are evident in their expertly crafted dishes; their food is refined and inspired;

Three MICHELIN Stars is our highest award, given for the superlative cooking of chefs at the peak of their profession; their cooking is elevated to an art form and some of their dishes are destined to become classics.

*See* https://guide.michelin.com/en/article/features/what-is-a-michelin-star, attached as **Exhibit J**.

14.     As of early 2025, only 217 restaurants in the United States have earned a single Michelin star, and only 33 restaurants in the U.S. have earned two Michelin stars. Plaintiff's restaurant Smyth is one of only 14 restaurants in the U.S. to have earned the exceedingly rare recognition of being awarded three Michelin stars.

15.     In another feat, in a separate publication that recognizes the world's best restaurants, Plaintiff's Smyth was ranked among the top 100 restaurants in the world (*see* https://www.theworlds50best.com/stories/News/the-worlds-50-best-restaurants-2024-51-100-list.html, attached as **Exhibit K**) and was more recently ranked number four in North America's 50 Best Restaurants, with numbers two and three both located in Canada.  In effect, Smyth was named the runner up as the best restaurant in the United States, second only to Atomix in New York. *See* https://www.theworlds50best.com/northamerica/en/list/1-50, attached as **Exhibit L**. In fact, in two separate events this year, Smyth and Atomix collaborated to create a one-night menu, the most recent of which took place at Atomix in New York, on October 3, 2025, which received significant media attention even before it took place, including in Chicago, where the Chicago Star described the event as "Michelin-starred Smyth and Atomix cook up a one-night-only dream team

dinner." *See* https://www.chicagostarmedia.com/restaurants/michelin-starred-smyth-and-atomix-cook-up-a-one-night-only-dream-team-dinner/article_603324ff-9645-4a73-8d89-e9ddef8b69db.html, attached as **Exhibit M.**

16.     Smyth has been listed as the sixth best restaurant in North America by the Opinionated About Dining (OAD) guide every year dating back to 2019. *See* https://www.oadguides.com/lists/north-america/top-restaurants/2019, attached as **Exhibit N**.

17.     Smyth has also been listed in eighteenth place on the Robb Report's 100 Greatest American Restaurants of the 21st Century. *See* https://robbreport.com/food-drink/dining/lists/best-restaurants-america-21st-century-1237256635, attached as **Exhibit O.**

18.     Unsurprisingly, given these significant honors and accolades, Smyth has been the subject of numerous media articles with significant local, national, and international reach.

19.     Not only do consumers read about Smyth's many accolades but diners from all over the United States and the world travel to Chicago to dine at Smyth. For example, the day the third Michelin star was announced in 2023, 1,200 new reservations were made, immediately filling the 13-table tasting menu restaurant from November through most of February that following year. *See* https://www.wttw.com/playlist/2024/03/06/smyth-three-michelin-stars, attached as **Exhibit P**.

20.     The SMYTH Marks represent substantial and valuable goodwill that Plaintiff has earned through years of hard work.

21.      By virtue of Smyth's commitment to culinary excellence, its hard-earned accolades, and the extensive advertising and promotion it has received on account of the unsolicited awards and media coverage mentioned above and elsewhere, a substantial number and proportion of consumers in and around Chicago, as well as across the United States and the world,

have come to associate the SMYTH Marks, and particularly SMYTH, solely and exclusively with JK Shields and its restaurant in Chicago.

22.    Due to its longstanding and extensive use of the SMYTH Marks and the exceptionally high quality of its cuisine, and news coverage regarding same, JK Shields has achieved a degree of fame in and around at Chicago, across the United States, and the world.

23.    Upon information and belief, other than Defendants' recent adoption and use, no other entity has used a mark identical to the unique spelling of word "SMYTH" in connection with restaurant or bar services.  Certainly, Plaintiff is unaware of any other entity using the term "SMYTH" in connection with restaurant services that have nationwide recognition or a federal trademark registration.

### Defendants' Smyth Tavern

24.    Upon information and belief, Defendant John McDonald holds himself out as the founder of Defendant Mercer Street Hospitality LLC and through Defendant Mercer Street Hospitality LLC, or other corporate entities, owns and operates a series of restaurants, including Lure Fishbar and Smyth Tavern. *See* https://www.mercerstreethospitality.com/about, attached hereto as **Exhibit Q**.

25.    Upon information and belief, Defendant John McDonald is intimately involved in decisions for each of the restaurants in the portfolio of restaurants owned and/or operated by him, or by the corporate Defendants.

26.    Upon information and belief, Defendants or their affiliates opened a Chicago location of Lure Fishbar in June 2021.

27.    Upon information and belief, Defendants opened Smyth Tavern in New York City in August 2022.

28.     The Lure Fishbar restaurant and other affiliated restaurants are advertised and promoted on the website located at http://lurefishbar.com, which upon information and belief is operated by Defendants or their affiliates. Shown below, and attached hereto as **Exhibit R**, is a true and correct copy of the Lure Fishbar website, with its advertising for Defendants' collection of restaurants, including Smyth Tavern:



29.     Lure Fishbar and Smyth Tavern are similarly advertised and promoted as related establishments on the various other websites for Defendants' restaurants, including mercerstreethospitality.com, as shown in Exhibit Q and reproduced below:



30.     According to the records of the USPTO, Defendants have applied for federal trademark registrations for many of their restaurants. For example, Defendant John McDonald owns U.S. Trademark Reg. No. 6,578,655 for LURE FISHBAR in Class 43 and Defendants 142 Mercer Street, LLC and Mercer Street Hospitality LLC own U.S. Trademark Reg. No. 6,674,745

for     in Class 43. Upon information and belief, Defendants have not applied for federal trademark protection for Smyth Tavern.

31.     Upon information and belief, Defendant John McDonald and the corporate Defendants were aware of Plaintiff's SMYTH Marks and Plaintiff's use of SMYTH in association with a restaurant, at the time Defendants first adopted and began to use "SMYTH" with restaurant services.

32.     Upon information and belief, Defendant John McDonald intentionally adopted, or directed the corporate Defendants to intentionally adopt, the term "SMYTH" in order to benefit from and ride off the goodwill of the well-known SMYTH Marks and restaurant.

33.     Upon information and belief, Defendant John McDonald personally oversaw and/or directed Defendants' decision to adopt and use the term "SMYTH" in their Smyth Tavern restaurant.

34.     Defendants' use of the "Smyth" name and mark creates the false impression that Defendants' Smyth Tavern restaurant and/or their other restaurants (including the Lure Fishbar restaurant in Chicago) are somehow connected or associated with Plaintiff's Smyth restaurant, so as to deceive customers or to cause confusion or mistake as to the origin or affiliation of Defendants' services. For example, consumers who have come to dine at Plaintiff's Smyth restaurant have asked Plaintiff if it is associated or affiliated with the "Smyth Tavern" referenced on the website of the Chicago location of Lure Fishbar.

35.     Defendants' use is also likely to dilute the distinctive quality of Plaintiff's SMYTH Marks. On information and belief, the association by consumers of Plaintiff's SMYTH Marks with Defendants' restaurant and bar services is likely to blur and/or tarnish the distinctive character of the SMYTH Marks.

36.     Defendants' infringing SMYTH mark is confusingly similar to Plaintiff's SMYTH Marks in appearance, sound, meaning and commercial impression. Defendants use the identical mark, including the unique spelling with the letter "Y," and even uses a nearly identical font and all capital letters, as shown below:

| Plaintiff's SMYTH Marks | Defendants' Use of "Smyth" |
|---|---|
|  | |

37.     Defendants' use of the identical mark "SMYTH" with identical restaurant and bar services is likely to cause confusion or mistake, or falsely suggest that Defendants' restaurant and bar services are related to, sponsored by, or affiliated with Plaintiff.

38.     Defendants' use of "SMYTH" trades off the goodwill and brand reputation of Plaintiff's SMYTH Marks.

39.     Defendants' conduct in using the identical mark "SMYTH" is likely to cause confusion in the marketplace among consumers and prospective consumers of Plaintiff's restaurant services.

40.     Upon information and belief, Defendants' use of "SMYTH" and advertisement of same, particularly in Chicago, has caused actual confusion.

41.     Plaintiff has been damaged and is likely to be further damaged by Defendants' wrongful use of the identical "SMYTH" mark in that the relevant purchasing public has been and is likely to continue to be induced into patronizing Defendants' businesses under the erroneous belief that those services originate or emanate from, or are somehow endorsed, sponsored, or approved by Plaintiff, which they are not.

**<u>Plaintiff's Cease and Desist Letter to Defendants</u>**

42.     Upon first learning of Defendants' use of the "SMYTH" mark in connection with restaurant and bar services, Plaintiff sent a letter to Defendants dated October 13, 2025 demanding that Defendants immediately cease and desist all further use of the infringing "SMYTH" mark.  Plaintiff requested a response by October 23, 2025.

43.     Defendants failed to respond to Plaintiff's letter and have failed to comply with Plaintiff's demand that they cease using the infringing "Smyth" mark. Defendants are thus engaging in unlawful activity and acting in bad faith, with a willful and deliberate intent to deceive

and cause confusion among consumers, and to injure Plaintiff, as well as Plaintiff's reputation and goodwill.

## COUNT I
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

44.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

45.     On information and belief, Defendant John McDonald and the corporate Defendants were aware of Plaintiff's SMYTH Marks and Plaintiff's use of SMYTH in association with a restaurant, at the time Defendants first adopted and began to use "SMYTH" with restaurant services.

46.     On information and belief, Defendant John McDonald intentionally adopted, or directed the corporate Defendants to intentionally adopt, the term "SMYTH" in order to benefit from and ride off the goodwill of the well-known SMYTH Marks and restaurant.

47.     Moreover, on information and belief, regardless of intentionality, Defendant John McDonald personally oversaw and/or directed Defendants' decision to adopt and use the term "SMYTH" in their Smyth Tavern restaurant.

48.     Defendants' use of an identical and confusingly similar imitation of the SMYTH Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services originate from or provided by Plaintiff, or are associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

49.     Defendants' infringing use of "SMYTH" is identical and confusingly similar to Plaintiff's SMYTH Registrations in violation of 15 U.S.C. § 1114.  Defendants' activities are causing and are likely to cause confusion and deceive members of the trade and public, and are

injuring and are likely to further injure the goodwill and reputation Plaintiff has developed in its SMYTH Marks. Plaintiff has no adequate remedy at law for these injuries to its goodwill and reputation.

50.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's SMYTH Marks, to Plaintiff's great and irreparable harm.

51.     Defendants have caused and are likely to continue causing substantial injury to the public and to Plaintiff.

## COUNT II
## FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

52.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

53.     On information and belief, Defendant John McDonald and the corporate Defendants were aware of Plaintiff's SMYTH Marks and Plaintiff's use of SMYTH in association with a restaurant, at the time Defendants first adopted and began to use "SMYTH" with restaurant services.

54.     On information and belief, Defendant John McDonald intentionally adopted, or directed the corporate Defendants to intentionally adopt, the term "SMYTH" in order to benefit from and ride off the goodwill of the well-known SMYTH Marks and restaurant.

55.     Moreover, on information and belief, regardless of intentionality, Defendant John McDonald personally oversaw and/or directed Defendants' decision to adopt and use the term "SMYTH" in their Smyth Tavern restaurant.

56.     Defendants' use of an identical and confusingly similar imitation of Plaintiff's SMYTH Marks have caused and is likely to cause confusion, deception, and mistake by creating

the false and misleading impression that Defendants' services originate from or are distributed by Plaintiff, or are affiliated, connected, or associated with Plaintiff or have the sponsorship, endorsement, or approval of Plaintiff.

57.     Defendants have created a false association and false designation of origin with their services in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused and are likely to continue to cause a likelihood of confusion and deception of members of the trade and public, and injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's SMYTH Marks for which Plaintiff has no adequate remedy at law.

58.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's SMYTH Marks, to the great and irreparable injury of Plaintiff.

59.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff.

## COUNT III
## FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))

60.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

61.     Plaintiff has continuously promoted and exclusively used the SMYTH Marks. The SMYTH Marks are, and have been, well-known and famous symbols of Plaintiff's services since before Defendants began using the infringing mark.

62.     Defendants' actions are diluting and destroying the distinctiveness of Plaintiff's strong and famous SMYTH Marks by eroding the public's exclusive identification of the SMYTH Marks with Plaintiff, tarnishing and degrading the positive associations and prestigious

connotations of the mark, and otherwise blurring and lessening the capacity of the mark to solely and exclusively identify and distinguish Plaintiff's services.

63. Defendants' actions are greatly diminishing and blurring the source-identifying capability of the SMYTH Marks through their marketing, advertising, and provision of services under an identical and confusingly similar name.

64. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's SMYTH Marks or to cause dilution of the mark, to the great and irreparable injury of Plaintiff.

65. As a result of Defendants' conduct and actions, Plaintiff's distinctive SMYTH Marks have been diluted, blurred, and diminished.

66. Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputations, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive SMYTH Marks in violation of 15 U.S.C. § 1125(c).

## COUNT IV
## TRADEMARK DILUTION UNDER THE ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT, FORMERLY THE ANTI-DILUTION ACT, 765 ILCS 1036/65

67. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

68. This Count arises under the Illinois Trademark Registration and Protection Act, formerly known colloquially as the "Anti-Dilution Act," 765 ILCS 1036/65.

69. Through Plaintiff's longstanding use of the SMYTH Marks in commerce in the State of Illinois, the mark has become impressed upon the minds of the relevant trade and consuming public as identifying Plaintiff. The SMYTH Marks have become a well-known and famous symbol of Plaintiff's services in the State of Illinois.

16

70.     Defendants' actions are diluting and destroying the distinctiveness of Plaintiff's strong, distinctive, and famous SMYTH Marks by eroding the public's exclusive identification of the SMYTH Marks with Plaintiff, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise blurring and lessening the capacity of the mark to solely and exclusively identify and distinguish Plaintiff's services.

71.     Defendants' actions are greatly diminishing and blurring the source-identifying capability of the SMYTH Marks through their marketing, advertising, and provision of services under an identical and confusingly similar name.

72.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's SMYTH Marks or to cause dilution of those marks, to the great and irreparable injury of Plaintiff.

73.     In addition to being entitled to injunctive relief under 765 ILCS 1036/65 for trademark dilution, Plaintiff is entitled to the remedies listed in 765 ILCS 1036/70, including "judgment for an amount not to exceed 3 times the profits and damages or reasonable attorneys' fees of the prevailing party, or both," because Defendants "willfully intended to trade on [Plaintiff's] reputation or to cause dilution of" the SMYTH Marks.

74.     As a result of Defendants' conduct and actions, Plaintiff's distinctive SMYTH Marks have been diluted, blurred, and diminished.  Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputations, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive SMYTH Marks in violation of 15 U.S.C. § 1125(c).

## COUNT V
## <u>COMMON LAW UNFAIR COMPETITION</u>

75.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

76.     This Count arises under an action for damages and injunctive relief pursuant to acts of unfair competition under the common law of the State of Illinois.

77.     Through Plaintiff's longstanding use of the SMYTH Marks in commerce, the mark has become impressed upon the minds of the relevant trade and consuming public as solely and exclusively identifying Plaintiff.

78.     Plaintiff has built a large and valuable business in its use of the SMYTH Marks to become one a small number of restaurants located in the United States that have achieved three Michelin stars and the world renown that accompanies it. The goodwill associated with Plaintiff's SMYTH Marks is of great value to Plaintiff, and by all rights belongs to Plaintiff alone.

79.     Defendants have used, and are continuing to use, their infringing name SMYTH Tavern in connection with their own restaurant and bar services.

80.      Defendants' unauthorized use of the name SMYTH Tavern is likely to cause confusion in the marketplace between Plaintiff and Defendants, and has enabled Defendants to compete unfairly and earn additional revenues off of the name recognition of Plaintiff's SMYTH Marks.

81.     Defendants' misappropriation is in willful and wanton disregard of Plaintiff's rights in and to SMYTH Marks, and without the consent of Plaintiff.

## COUNT VI
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT UNDER 815 ILCS 505

82.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

83.     On information and belief, Defendants' above-described acts have been made with the intent of causing a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with Plaintiff.

84.     Defendants' acts constitute a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 insofar as they:

       (a)    cause likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of services;

       (b)    cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another; and

       (c)    represent that services have approval, characteristics, approval, status, affiliation or connection that they do not have.

85.     Upon information and belief, Defendants have willfully engaged in the deceptive trade practices complained of herein.

86.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

87.     Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure Plaintiff, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its goodwill.

88.     Defendants have unjustly gained revenue and profits by virtue of their wrongful acts that they otherwise would not have obtained and to which they are not entitled.

89.     Plaintiff has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

90.     Plaintiff has no adequate remedy at law for the wrongful actions of Defendants.

**COUNT VII**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT UNDER 815 ILCS 510**

91.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

92.     On information and belief, Defendants' above-described acts have been made with the intent of causing a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with Plaintiff.

93.     Defendants' acts constitute a violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510 insofar as they:

> (a)     cause likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of services;

> (b)     cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another; and

> (c)     represent that services have approval, characteristics, approval, status, affiliation or connection that they do not have.

94.     On information and belief, Defendants have willfully engaged in the deceptive trade practices complained of herein.

95.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

20

96.     Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure Plaintiff, including through loss of customers, loss of distinctiveness, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of their mark.

97.     Defendants have unjustly gained revenue and profits by virtue of their wrongful acts that it otherwise would not have obtained and to which they are not entitled.

98.     Plaintiff has no adequate remedy at law for the wrongful actions of Defendants.

### RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(a)     Under 15 U.S.C. § 1116, Defendants and all those acting in concert with them shall be permanently enjoined from:

(i)     Using the infringing "SMYTH" mark and any other confusingly similar mark, to advertise, or provide services that may reasonably be encompassed by the SMYTH Marks;

(ii)     Using any service mark, trademark, trade name, trade dress, word, domain name, number, abbreviation, design, color, arrangement, collocation, or any combination thereof, which would imitate, resemble, suggest or dilute the SMYTH Marks;

(iii)     Otherwise infringing the SMYTH Marks;

(iv)     Unfairly competing with Plaintiff or otherwise injuring its business reputation in any manner;

(b)     Under 15 U.S.C. § 1117, Defendants shall be ordered to pay to Plaintiff damages in an amount sufficient to compensate it fairly for the injuries it has sustained and will sustain, together with all profits that are attributable to Defendants' use of their infringing mark, and further that the amount of the monetary award be trebled in view of the willful and deliberate nature of Defendants' unlawful conduct;

(c)     Under 15 U.S.C. § 1117, that the case be deemed to be exceptional, in view of the willful and deliberate nature of Defendants' unlawful conduct, and that Defendants be ordered to pay Plaintiff its attorneys' fees and costs;

(d)     Under 15 U.S.C. § 1118, Defendants be directed to deliver up for destruction all advertisements, labels, signs, prints, packages, and all other materials in its possession or under its control bearing the infringing "SMYTH" mark;

(e)     Under Illinois state law, that Defendants be enjoined from any further use of the word "SMYTH" or any marks confusingly similar to Plaintiff's SMYTH Marks as diluting and/or likely to cause confusion with the SMYTH Marks, and that Defendants be ordered to pay Plaintiff damages in an amount sufficient to compensate it fairly for the injuries it has sustained and will sustain, together with all profits that are attributable to Defendants' infringing mark, and that such awards be trebled in view of Defendants' willful and bad faith conduct; and

(f)     Any further relief as this Court may deem equitable and proper.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial as to all issues so triable.

Respectfully submitted,

Dated: November 19, 2025          /s/ *Barry R. Horwitz*

Barry R. Horwitz
Marc H. Trachtenberg
Katherine M. Cronin
GREENBERG TRAURIG LLP
360 North Green Street, Suite 1300
Chicago, Illinois 60607
(312) 456 8400 (p)
(312) 456 8434 (f)
horwitzb@gtlaw.com
trachtenbergm@gtlaw.com
cronink@gtlaw.com

*Attorneys for Plaintiff*